May it please the Court, Frank McCabe for Appellant Gary Roller. I'd like to talk about the search warrant affidavit. The district court, I think, was correct in saying that the agent deliberately failed to include in this affidavit any information regarding the 2004 interview with Appellant Roller and then the closure of the government's investigation. Which the What does that show? What's the relevance of that? Well, if they had included it, what would it help? Well, I think what the affidavit indicated was that there were, in 2002 and 2003, there were 22 purchases of access to child pornography websites. And then six times the same purchases in 2006 and 2007. And it looked very much like there was a continuing pattern of such activity. But in the middle, in 2004, I think what was omitted was really monumental, that two agents went to the appellant's home. They interviewed him for an hour and a half. They told him that they could terminate the interview at any time and he didn't have to answer any questions. But he went ahead and answered all questions, cooperated in every respect during the entire interview, did not try to terminate it at all. And then he gave them to look at 11 videotapes to determine whether they contained any child pornography. He showed them his computer and he showed them that he had 300 solicitations of pornography. And in every instance, he had requested that they not submit anything more to his website, that he be removed from the mailing lists, e-mailing lists. He admitted that he had viewed bodybuilding websites that contained soft pornography. Then after the interview and after the agents went back and they looked at what he had provided them, they determined that there was not enough evidence to proceed with child pornography charges. And they closed their case and returned everything that they had taken from Mr. Roller back to him. And I think all of that is very, very significant. And I would suggest that had that been included in the affidavit, and all of that is not just Mr. Roller's testimony, that is the report, the two-page report of the agents that appears in the second volume of the excerpts at pages 139 and 140. That's the government agent's own recitation of what happened. And I would suggest that there's no evidence that he refused to give them anything. Kagan, how does that undermine, I think Judge Reinhart's question really, how does that earlier information undermine, fatally undermine, the 2006-2007 activity? Well, I think my point is that if all of that had been disclosed and it originated because there were 22 attempts or 22 accesses, that after this entire investigation, the only thing that they had in addition was six additional accesses. Within the last year, right? Yes. I think that the magistrate might very well have concluded that this is much the same as the first time, that they needed more. They needed more investigation, perhaps investigation that he had actually downloaded from these sites, that he had actually looked at the child pornography, because there was no evidence that he had done that. Or it warranted another conversation, interview with him, and perhaps they would find something in the second interview that they had not found the first time. But these were new subscriptions, right? In 2006-2007, there were six new subscriptions to websites selling child pornography, right? That's correct. Websites, as I understand it, sold among what they sold was child pornography. They were not exclusively child pornography websites. Thank you for the clarification. But I think it is not a given. It is certainly far from a certainty that the magistrate, Judge, would have found a probable cause had he known all of this had occurred in 2004. You used half your time on this issue. Do you want to get on to another one? I would like to spend a little time by talking about the sufficiency of evidence, which was the first argument. The agents seized four computers, 18 zip disks, many, many more items. They found something illegal on only one zip disk. They found no evidence that they found anything illegal on anything else that they seized. All of the other zip disks were returned to the appellant. There's no evidence the appellant downloaded these images or viewed them. No evidence at trial was introduced that they found child pornography on his computers. And, in fact, the government dismissed the count, which alleged in the indictment that there was possession of child pornography received by the computer. I would suggest that what we have here is we'd be extending the law beyond what any other case has shown. What we have is some unknown person who may have been appellant, may not have been, goes out and acquires a disk. Then some unknown person puts child pornography on it. And then the disk is found in the appellant's residence. Is the nexus to interstate commerce satisfied? And I would respectfully suggest it is not without anything more because, as the Court is aware, there was no admission by the appellant. There is no discovery of any other pornography in his residence. It is that and nothing else. The point of this argument is that because there's only one disk and you don't know how it got there among his disks, there's not enough nexus to show that he was the actual owner of the disk. And the owner may translate to producer. Yes. And the only indication is that the zip disk itself was created or manufactured outside the State of California. That's all. And I would suggest that without anything more. Are you challenging that point also? Yes. Without anything more, there just simply isn't enough. So you think that the use of the disk to transport the – not transport. Putting the images on the disk does not constitute a violation of the statute on the basis that there's no out-of-State conduct because the manufacturer of the disk out-of-State is insufficient? I would suggest that what we have here is similar to a gun case where a gun prosecution where a gun case, a case that has the gun inside it, is the only thing that is manufactured out-of-State and no evidence that the gun itself or any part of the gun is manufactured out-of-State. I think here we have – we don't know who, when, where the pornography was put onto the zip disk. All we know – Those are two different issues. I've been trying to see whether you have two different arguments. One is we don't know who did it. Right. Two is it doesn't matter who did it because it's not enough to constitute a violation. Are you making both those? I would make both of those arguments. Pardon me? Yes, I would make both arguments. Okay. And on the second argument, do you think we are bound by the two decisions that we have made that appear to suggest that it's enough? Lacey, I think it is, and Guardiano, do those cases preclude your argument? And if not, why not? Well, I'm not sure if they do or not. I would suggest they don't, because in both of those cases, and I think in any Ninth Circuit case, there is more, there is an admission, there is some evidence. And are we missing here is the evidence of downloading? Is that your argument? Well, that is part of it. We don't know who, if anybody, ever downloaded or ever viewed this pornography. But that's your first of the two arguments. Well, that's true. The second is if you do know, you're arguing that that's still not enough, even if he did do it. Even if you had evidence that he did download or he did view these images, which I don't think we have at all in the case, that still isn't enough. I'm not sure the Court has to get that far. I think the Court can say there is no evidence that he – that the images were downloaded, viewed by anyone. But you think it would be an – excuse me. You think it would be an extension of our law for us to go – you don't think we can rely on Lacey to answer Judge Leinhart's question? I think Lacey is distinguishable because there is additional evidence that pinning Lacey to his admissions, as I recall, and evidence that came in that he was using the computer that he personally downloaded. Your time is up, but we'll give you two minutes to rebuttal. Thank you. May it please the Court. My name is Ann Voights, and I represent the government in this case. This Court should affirm because the district court correctly denied defendant's motion to suppress, and because it correctly found that the interstate nexus was adequately proven at trial. If I might address the first issue. With respect to the question about – that Judge Reinhart asked about the relevance of the information. In fact, as the district court found, it didn't indicate much. What happened here was not a search. What happened was defendant knew that they were coming to ask him about purchases made from the Internet. They called him a week or two before they came. So now you're talking about the 2002 time frame. Correct. I'm talking about the Frank's claim with respect to the omission of the interview with the defendant in 2004. And as the declaration of the agent demonstrates, in fact, they weren't searching the computer. Defendant showed them what he wanted them to see. It was not a meaningful search by any means. It was a, as the district court found, a self-serving presentation. And as such, it certainly didn't negate probable cause here, particularly where you had the subsequent investigation. And what the subsequent investigation from the home collection showed was that defendant had purchased a paid subscription to child pornography sites, not once, but six times. So you had the initial 22 subscriptions, but even if one were to disregard those, you still had six subscriptions that tied back to defendant's address and to his static IP address, which linked to his house. Within the last year prior to the execution of the search warrant? That's correct. Within, I believe it was six or seven months. The last one, I believe, was in March of that year. Just out of curiosity, what was it that caused the agents to close the first investigation rather than prosecuting? I think the record simply reflects that they went. He did this presentation to them, and then they closed it because they didn't think that they had enough evidence at that point. But as the agent noted in his declaration, that was different from concluding that defendant had been cleared. They didn't see evidence that disproved the idea that he had subscribed to these websites, but they didn't think that they had enough at that point to go forward. However, that was then they got additional information subsequently with the six further subscriptions that occurred as part of the home collection investigation. Is opposing counsel correct that those websites, the six subscriptions are websites that don't just offer prohibited pornography? I think that's a reading that the district court rejected in its order denying the motion to suppress. What defendant relied on, at least in his briefs, was the statement that there were three images that were described specifically and in some detail. And the defendant tried to argue that those were the only images. But I think that's not a fair reading of the affidavit in this case. They're described as child pornography websites. They had titles such as Spycam Lolitas that, as the district court also found, are indicative of child pornography. And they described them as child pornography websites. If I might address, I'd finalize by simply noting that in Gord, Gord described joining a subscription site for child pornography as sort of both a small step and a very giant one. And that's a step that here Defendant took multiple times. We submit that even if the district court had had or even if the magistrate judge had had that information. It's not a small step, but a very giant one? In Gord, they described it as it may be. It's a deliberate step. It's not accessing something by accident. As the affidavit set forth, you had to take multiple steps to be able to subscribe to it, including paying to have access to it. So this wasn't an accident. It was something that he did deliberately and that he did deliberately several times. Accordingly, even if the agent had included that information in the affidavit, we submit the district court correctly found that it would not negate probable cause in this case. If I might turn to the second issue, the interstate commerce issue. First, if I might address a factual issue about what was found and where it was found. Defendant is correct that at trial the focus was on the images found on the zip drive, but as a matter of accuracy, as the PSR notes, there were also images that were found on the computer and on one other zip drive that was returned by accident to the defendant. And that's set forth at the PSR in paragraphs 24 and 25. And I believe in the computer, they were found in the printer spool and in the other one. The efficiency of the evidence? I think this Court can consider as part of the entire record, but it's more in the note in the manner of a factual clarification to the Court. Well, it may make a difference. I mean, all the other cases had to do with a hard drive. This is, I think, this case involves at least in the primary part the zip drive, which is a little bit different. You can get a zip drive in the mail and not put it in your computer. You can't see the images on it. On the other hand, go ahead. Correct. But in this case, in fact, the zip drive also had aerial images of defendant's premises, which had been put on the zip disk before the images of child pornography had been saved onto it. So we would submit that this Court doesn't even need to reach the issue of whether it's enough that someone other than defendant put the issue, put the images on the zip drive, because as the district court found, in this case, the facts were sufficient to find beyond a reasonable doubt the defendant was, in fact, the person who was responsible. He lived alone. His residence was secured. No one else lived there. The zip drive was found in his office along with an external zip drive that was connected to the computer. And the zip drive, as I said, had images of his premises that had been saved in relatively the same time period as the images of child pornography. And then finally, the district court noted that because they found magazines that also had child pornography in his residence, that also helped to establish that he had not just the means and the ability, but that he had the interest in downloading and saving those images. And as this Court has found in Laysing-Gagliardo, the act of saving them, of creating that file on a disk, is enough to produce it within that prong of the statute. So we would submit that a reasonable fact finder in this case could have found, as in fact the district court did, that the interstate nexus was met in this case. If the Court has no further questions, I'd be happy to go. Kennedy, could you explain footnote 7 and Lynn to me? What is that saying? I'm sorry? Footnote 7 and Lynn. If I might retrieve Lynn. I mean, I just said difficultly understanding what it said or meant. So looking at footnote 7, they were emphasizing that in Lynn, in fact, what they were relying on was not, in this case, it was whether the images themselves were transported in interstate commerce, whereas in Laysing-Gagliardo as here, the prong that was being considered was whether the materials that were used to produce the images, that is, the materials on which they were saved, had in fact traveled in interstate commerce. And in this case they were relying on the first prong in Lynn, and you're relying on the second prong here? Correct. We're relying on the prong that the materials used in producing the images traveled in interstate commerce. And defendant in this case stipulated at trial that the zip disk had in fact traveled in interstate commerce. So in your views, are there two, at least two acts of production? Yes. I think the act of saving them on the disk is, I think, the essential one here. Right. But then you say that there probably is another act of production when the images were recorded initially. I think that's correct, yes. It's kind of an odd way to look at a statute, isn't it? It is, although this Court has observed that even if the image that's being copied, even though it's not the original, that's still sufficient to meet the definition of production under the statute. Right. I know our case law says that, but we struggle with that a bit in Lynn. And I'm not sure we have a satisfactory answer to it. If the Court has no further questions, I'm happy to submit. Thank you, counsel. Thank you. I'd like to attempt to answer Judge Kristin's question regarding whether this was exclusively a pornography, child pornography website, and I think it was not. I'm looking at the language of the affidavit. Paragraph 37 discusses the home collection website. And he said there were 9,076 image files and 119 video files, and several of the images depicted child pornography. And my view of the word several means not a whole lot. Certainly, he could have used the word all of the images or almost all or most of the And to me, that means probably far less than half. I think I must be looking at the wrong paragraph, counsel. Can you tell me again which paragraph? Paragraph 37 of the affidavit. Thank you. And from that, I think it is not a given. It is certainly not necessarily true that Appellant, if he downloaded or if he looked or viewed at any of these, that he was looking at child pornography images. He may have, but he may not have. The other and final point, because of my time, I would say I have a problem with saying that this 2004 interview was a self-serving presentation. I mean, I've been around a long time, and I've seen a lot of interviews of defendants. And many times when contraband is involved, the defendant will say, I didn't know it was illegal, or I didn't think it was cocaine, a white substance, or it's not mine. I don't know how it ever got there. But I have never found a case where that was enough for the agents to close the investigation and not prosecute the defendant. And I think here, they had every opportunity to examine everything. The roller did not deny them access to anything, yet they became convinced, and he must have made a very good, honest presentation, that there was no illegality here. They closed their case. They didn't suspend it. They didn't stop. They didn't try to get further evidence. They went back. They looked at what he provided them, and they closed their case. And I think for that to be omitted from the declaration or the affidavit is a major thing, and I think it would have influenced the magistrate as to whether to find probable cause for the issuance of the search warrant. Thank you. Thank you. The case, Mr. Harrigan, will be submitted.
judges: Reinhardt, Thomas, Christen